I am Catherine Hart, representing Clarissa Schuster. Your Honors, I didn't know that I would be the second equitable establishment case today, but obviously my previous counsel mentioned the case of Holland v. Florida. That's a case that Ivory Logicon founded, a U.S. Supreme Court case that allowed equitable tolling. In cases in the EU DPA provided there were extraordinary circumstances that prevented the petitioner from continually filing, the district court in this case acknowledged the holding of Holland, but made the conclusion that this was simply a case of attorney neglectful as in computing a filing date, and that there was no nexus between the computation of the filing date and Ms. Schuster not filing something on time. But Alison, I'd like you to explore, because the deference we're supposed to give to the actual findings, my question is, do you take the position that in fact the court did not apply the correct legal standard for determining causation, or that the actual findings are somehow purely erroneous? The court did not apply the correct legal standard. And last week I filed one of those 28-J letters asking the court to look at the case of Brooks v. States. That case was decided I think a couple of months before they filed the opening brief in the Schuster case. Perhaps I wasn't aware of it then, but I felt that that case really clarified the standard here, because that was the case out of my same district where the district court judge said, well, this is just a miscomputation of the filing deadline. And this serpent said the proper inquiry is to look at whether the extraordinary circumstances prevented the petitioner from timely filing. And there is a concurring opinion by Judge Kuczynski that contains language, language that talks about the attorney having a duty to inform the client of any major developments in the case. And Judge Kuczynski goes on to talk about before the ship has sunk, well, there were some major, major developments in the Schuster case that affected the late filing here. And there were major developments in this case where she should have been informed of what was happening with her case. And if I keep those examples, in July of 2012, approximately two months before the deadline, she is calling this agency, the Foundation for Inmate Advocacy, and she is concerned about her filing deadline. She calls again on July 29th, and she is again concerned and anxious about her filing deadline. She has not, to our knowledge, had any attorney visits. So she's been promised by the agency that she will have a fully licensed attorney. After the pools of interest have been allegedly working on the case, she's going to have, as of April 2012, a fully licensed attorney who's going to be dedicated to her case, because Foundation of Inmate Advocacy is looking out for her welfare. So she and the court get fine diligence on her part. She is calling Foundation of Inmate Advocacy. She's trying to find out the status of her case. It runs through one attorney, Harper, who keeps the case for approximately a month. Then it goes to an attorney by the name of McCurley, who apparently has the case, but he's delaying whether he's going to San Diego to start work for the agency. But by August 9th, McCurley has notified the agency that he is not going to work for the agency. He has the Schuster file. He has a petition for review from the state court attorney, Jerome Wallenford, who had informed Schuster that the deadline is 90 days after the petition for cert, and you better get that file early or there will be trouble or worse, as a matter of fact. By August 9th, when Mr. McCurley decides not to work for the agency, not to complete the Larissa Schuster habeas petition, nothing is told to Schuster. No information whatsoever, thus we have no evidence of any information being conveyed to her. This fits right in with Judge Kuczynski's concurring opinion about the attorneys having an obligation to notify the client of significant developments. Also at the same time that that happens, April 9th, we have Susan Carter, the non-attorney head of this agency, who just takes off, doesn't work. Her declaration later says that she had a sister who was sick. At any rate, she disappears from the agency. McCurley quits. The agency appears to be in some type of turmoil, though we don't know because we haven't, you know, succeeded in discovery on everything that was going on in the agency at that time. But it is not until the end of August, after which time, Ms. Schuster could have been notified of what was happening with the agency. She could have been notified of some significance that her dear Ms. Schuster, you know, problems afoot in the agency. I wouldn't phrase it that way, but, you know, for example, we are unable to file your petition on a timely basis. We suggest that you take this petition for review, which your state court attorney has federalized. As you look at it, at this petition that was filed, it looks, I mean, exactly like a state court pleading that has been federalized. Take your petition, file it with the court. She filed a declaration saying, although she did not know what the exact due dates were, that if she could know what was happening with this agency, that she would have undertaken filing. Instead, we know a debacle happens. By August 29th, we have a new attorney that's apparently coming in on it who doesn't know anything about the case. We've had that lacuna for about three weeks where no attorney is working on the case. We have then some e-mail discussion between Susan Carter, the non-attorney head of the agency, and Krakowski, the new attorney who's coming in and summoned in the last minute to try to file a petition. And we have an e-mail talking about how, well, Ms. Schuster is going to have to file pro se. Well, she had already been told. She had been told back in February 27th of 2012, the good news is you won't have to file pro se. We will have a fully licensed attorney. We're running down to the end of the month. We wouldn't even have been trying to send a client pro se. Would you just clarify one issue at one point that she was temporarily representing herself, but as soon as they got a licensed attorney up and running for the Eastern District, they went with her? Well, that was actually after the one day late petition had been filed when Susan Carter comes back in on the case. And Mr. Nadal is still on the case because he hasn't been released from the court. And Ms. Schuster was told at that time that she needs to be pro se. But my recollection of this record is that she was never told during the pendency before the petition was due in 2012. She wasn't told she had to be pro se. Was she told that Mr. Nadal was going to be the one to file her petition? Well, she was told in February that an attorney would be appointed or would be redeemed by the agency that would start in April to represent her. But was she ever told because of the flurry of what was going on they couldn't find anybody who was licensed in the Eastern District? Was she ever told about the exact deadline or the wrong deadline? No, that it's because they couldn't find an Eastern District of California lawyer that Mr. Nadal was being solicited. She wasn't told that. She called up her trial attorney, Roger Nadal, and she called him at the end of August asking about her petition. And then Mr. Nadal, according to the emails, Mr. Nadal then called Susan Carter, who had been unavailable earlier that month, and called Susan Carter to say that Ms. Shuster was concerned about her filing deadline. It was at that point that the agency then came in on September 5th, the day before the petition was actually due, and asked Mr. Nadal to help them file the petition. Ms. Shuster was in Mr. Nadal's position on September 6th. Is that correct? On September 6th, in the afternoon of September 6th, Alexander Kokoski sends an ill-formatted petition to Roger Nadal, who was not notified that he had to be the attorney, and Ms. Shuster was never notified that Mr. Nadal was coming in as a good Samaritan at the end. I'm sorry, I don't think you finished your question. Well, I'm just trying to figure out if there was— I mean, I know there were significant formatting issues, but the petition—was it unreasonable for the district court to conclude that the only reason this petition was not ultimately filed on September 6th was because Mr. Nadal had relied on the FIA miscalculation of the filing deadline? Mr. Nadal had no understanding, no agreement, no privity of any type of contract with Larissa Shuster. At that point at all, he was the trial counsel, and under California Rules of Court, trial counsel has a duty to provide files to successor counsel, but he came in at the end without— I think it should be analyzed in terms of a supervening causation. Shuster was never notified, never expected, that her trial attorney would come in at the last second. The trial attorney was notified on the day it was due. Well, there was a phone call the day before, September 5th, but the phone call wasn't returned until September 6th, at which time the agency asked Nadal's office to file it. Nadal's office got an ill-formatted petition with Mr. Nadal listed as attorney of record, contrary to any understanding of his whatsoever, out of his generosity, commitment, and feeling of some type of obligation to Ms. Shuster. He came in and ended up filing, and the problem with that is that there was an ill-formatted petition that was submitted on September 6th with his name on it. I think we have in mind that issue in terms of the timing of the trial counsel deadline. Yes, I do. But don't you have to show, according to Smithson, that the alleged extraordinary circumstance was both a but-for and a possibly-cause of latency? And how do you do that? Exactly. The extraordinary circumstances here were such that she was abandoned, effectively abandoned at the beginning of August, but the attorney who she thought was working on the case, McCurley, ended up not working for the agency, not finishing the petition, and she was not told. And if she had been told, it's our contention that if she had been told, she could have filed something on her own, because she was armed with the knowledge from the trial attorney, or I mean from the appellate attorneys, letter to her, that it was important that the petition be filed before the time ran out, and she earned it. Okay, so I understand what you're saying there, but taking it another step further, you've also cited cases that stand for the proposition that egregious attorney misconduct may justify equitable tolling, correct? Doesn't it matter that Garner was not an attorney? Well, egregious and extraordinary circumstances don't have to be an attorney's misconduct. It can be, as you've had in your last case, an issue of a court or a court not sending a paper to somebody. It can be a prison who is not sending the filing fee. I mean, there's cases of extraordinary circumstances that don't involve attorney misconduct. So in this case, I have made a lot in my brief, I guess, about this non-attorney head of the agency acting as an attorney, but ultimately, I mean, to answer your question correctly, I don't think it makes a difference whether it's attorney or non-attorney misconduct if the extraordinary circumstances are the circumstances that impede, that obstruct, and prevent the person from filing on a timely basis. And her very diligent attempts to keep up in asking about the case and to be concerned about it, those exemplify the fact that she would have filed it on time. So I think if this had been a case where Mr. Nuttall had not come in at the last moment, sweeping in as an avenging angel to try to help the district, if that hadn't been done, then I think this case would have been perceived more of as an abandonment. And I think the district court did not see it as an abandonment because he saw Mr. Nuttall coming in at the last minute. Thank you. Okay. Good morning. My name is Justin Riley, on behalf of the warden. First, I'd like to address the 28 January approach. This wasn't an equitable toiling case. It just wasn't. It was a Rule 60B case. In that case, the federal petition was dismissed for lack of litigation, essentially, and the petitioner was trying to reopen the judgment. They had to make a showing of cause to reopen the judgment under 60B. It wasn't an equitable toiling case. There was an undercurrent of equitable toiling because the petition was also untimely filed. They're litigating that now. The district court was sent back to reopen the judgment under 60B. Brooks has nothing more to share. What I'd be interested in having you address is this is not Garden Ready, which is where you've got an attorney, and the attorney just busts the deadline in some way. Basically, we have this sort of almost fraudulent organization that supposedly is representing the client, but is not really representing the client. The client thinks that she's being represented, and it's pretty extraordinary that it doesn't happen that often in the ABS context. So why is that something that is not just Garden Ready negligence but a more extraordinary circumstance? Extraordinary can't just be, wow, I've never seen a case before, and we have actually inmates get fellow inmates every day, and most of the inferences that I see at the bottom, it's signed on behalf of the petitioner for some inmate lawyer. Most of these people are represented. This is not a jailhouse lawyer situation. This is an organization holding itself out as having licensed attorneys that are going to represent the client. It was simply Susie Carter. She said she was trying to get attorneys to work on it. This is not a jailhouse. I mean, because it seemed to be undisputed, and I'm curious to hear what you're arguing today. It seems to be undisputed that Ms. Carter affirmatively misled Ms. Shuster for nearly a year into thinking that a licensed attorney was working on her ABS petition and that there would be an attorney in the FIA that was capable of filing her ABS petition before the deadline. But I'm curious to see if you dispute. I mean, it seems also that no FIA attorney performed substantial work on her petition until a few weeks or maybe a week leading up to the deadline, and FIA, no attorney admitted into the Eastern District of California who could have filed her petition on time. Do you dispute any of that? I don't know what kind of work was done by attorneys working with or for the FIA. I know that a petition was created. I know that deadline was filed. So do you have to assume, I mean, look at the petition of the client most favorable to Ms. Shuster here? Pardon me? Do we have to look at the petition of the client most favorable to Ms. Shuster? No. The district court's actual findings are clear. I don't know. Maybe I don't understand the question. It seems based on what was presented, I didn't realize that you were disputing all of the misrepresentation that occurred, but you're disputing that misrepresentation that occurred. It appears that Susan Carter was, as your correspondence and telephone calls was telling Ms. Shuster that she planned to have attorneys work for FIA that did occur. She planned to have attorneys work on the case that did occur, and accounted at least for places attorneys that were working on the case, even before Mr. Nuttall worked on the case. And most importantly, Susan Carter said we've calculated the deadline of September 8, 2012. We're going to meet that deadline, and she did. That's the problem here. She met the deadline. Whatever she was doing in her personal life, whatever the FIA did or did not do in getting off the ground a successful organization, they calculated the deadline, and they met it. So are you suggesting that the Nuttall organization that took it upon themselves, essentially, to get this in shape to be filed under their name as licensed attorneys, are you suggesting that that is the space of the problem, and not everything that happened the year or so before, because you have Carter not being an attorney, although you've got attorneys working for Carter. So FIA has some semblance of licensed professional attorneys, and could not, Shuster, have had an attorney-client relationship with FIA, even though you argue that Carter's not an attorney.  She could not have had an attorney-client privilege with FIA. She never claims that she had. She doesn't, for example, produce a, what might look like, agreement between attorneys. Let me help you with something. Did her parents donate to FIA, and they did that in the spirit of helping this organization help their daughter? Absolutely. So what kind of relationship did she have with them? At Document Creation Services, you can hire paralegals as a private person to help you create documents for things like disclosure of marriage. Well, yes, but I don't think you're dealing with an attorney. You don't need to abide by the California rule, which is a whole separate issue for the attorney. And I think that's what you're getting at. But not for Ms. Shuster. I mean, she doesn't know that California requires something other than what she had. I mean, she thought she had a relationship, both attorney-client relationship, right? She didn't hire an attorney, so I don't know why she would have reasonably thought that. Why didn't she hire an attorney when she donated money to the organization that told her they were going to have a licensed attorney from the Eastern District work on her case? I think we're going far afield. She never hired an attorney. She just didn't. Susan Carter said, I am not an attorney. We do not have attorneys working for us. And that was the state of affairs on the $500 change, James. She always said, I was going to try to get an attorney. So she said that Carter wasn't an attorney and she was led to believe that once Carter was released from prison, she would be back in the courtroom. She hoped to. She never promised. I understand. Because in Schuster's declaration, paragraph 10, she said she did not realize at any point before Roger Nuttall and his assistants filed her federal petition that FIA did not have a licensed attorney prepared for her petition. So she thought she had hired counsel, whether she had to pay them or not, because Carter told her, we have grant money. Don't worry about it. We're nonprofit. She thought she hired counsel when Susan Carter said, I'm not an attorney and I don't have attorneys working for me. Well, that's the statement, isn't it? Let me go to your question about is the window that one day that Mr. Nuttall had the case. Well, the window is the 11 months that FIA had Ms. Schuster's petition being drafted. They calculated a deadline of September 8th. Three separate attorneys calculated that deadline who worked for FIA. She said they didn't have attorneys working for her. Not at the time that Schuster hired them. Well, but she was told that they would be getting an attorney, and they did have attorneys working on her case, right? They did have attorneys working on her case. If they're not representing her, who are they representing? They were independent contractors for FIA. Susan Carter, in her declaration, said, we never established an attorney-client relationship with Schuster and any of the attorneys that were working for us. It would be as if I told my mother to go off and ask an attorney a question about my case. That's almost it. You go ask that attorney that you know what my deadline is and what court I should file in. Thank you. And it keeps back to me. This was an independent contractor situation. Schuster never formed a relationship with any individual attorney or even a law firm. She never did. But let me get to the future FIA. Were they not these old lawyers who were working for this FIA? It wasn't clear to me who were ever employed. I saw a couple of e-mails in there that said one of the attorneys said, you need to pay me. You need to pay me, yeah. We should address this on what the legal status of the attorney to FIA was. I mean, that's not something the client knows. It's like you walk into a place where you have a moniker. You don't ask, are you an independent contractor? Are you an attorney? Do you have a salary or other basis? She doesn't have to know that, right? She has to know that she's forming a relationship with an attorney, and she didn't. Even if a miscalculation of the deadline occurred here, that's what Schuster did. That's exactly right. Okay. It seems that this was, that was a new one of a number of barriers that Ms. Schuster faced in getting her petition filed. I think your argument is that we separated out or ignored the other argument. It's arguable the egregious conduct that was going on at FIA. Is that your position? No, not ignore it. I'm saying that everything that, either the egregious misconduct was accepted at the time of hiring. For example, I didn't hire an attorney. Several of the things you say is, well, they were acting as if they were attorneys and they weren't attorneys, but that's exactly what you hired was a non-attorney. You can't take a non-attorney to task for anything like an attorney when what you wanted to know was legal representation. Well, given those statements, though, is the statement by FIA to Schuster that all of her rents would be represented a deformative misrepresentation? That was the plan, I believe, at one point, and that was after Schuster hired FIA. Susan Carter sent a correspondence that said something like, we plan on getting some attorneys. We plan on getting them licensed in the Eastman District. Therefore, you won't have to sign me as a spoker. We can file them directly from here. But that never happened. If I can focus on... Your time has expired, but you can sum up. Thank you. If I can focus on your question, and it was ignore the other things. No, everything that the petitioner is complaining of stems from the 2-a-day miscalculation. But for the miscalculation, everything would have occurred just the way it had, and we would be litigating the murders of this client. It's because they filed the petition one day late that she's complaining at all. They told her even before the September 8th deadline that the deadline would be September 8th. She accepted it. They said, we will file by September 8th. They did so. They did everything that they promised. We will get you a federal petition on file by September 8th, and they didn't. Thank you. I'll give you one minute. The meetings are over in quite a bit. At some point, we will force you to dissuade that amount. Okay, well, first of all, there was a question about the presumption under Holland v. Florida of the Supreme Court case I referred to in my opening argument. There is a rebuttable presumption in favor of the applicable tolling. Now, applicable tolling, I understand, that is rare. It's an unusual case. But that Holland case specifically says there's a rebuttable presumption in favor of it. All right. It was the February 27th letter to Schuster, Exhibit 16, based on page 281 and 282, in which she is told that she will not have to proceed, pro se, and that the agency is watching out for you. The agency wasn't watching out for her because at the time that Nadol came in, on actually September 6th, but there was a phone call September 5th, he tried to call Susan Carter. Her number was disconnected. He tried to call the cell phone number. That was disconnected. And neither Mr. Nadol's daughter, Natalie Nadol, attorney at law, nor Krakowski had any involvement with Susan Carter at that point. So, again, this fits with my contention that it was Mr. Nadol that saw that that petition was filed, and he had no agreement with the rest of Schuster to do that. Thank you. Okay. All right. Thank you all for your arguments this morning. Schuster v. Johnson is submitted. The next case for argument is Latham v. Hewlett-Packard.
judges: McKeown, Murguia, Rufe